UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEPHEN A. CHERRY,<br><br>        Plaintiff,<br><br>vs.<br><br>DWAYNE SHEDD, JEFF KIRKMAN, RANDY HIGGINS, ANDREA BLADES, BRENT REINKE, and JESSICA LORELLO,<br><br>        Defendants. | Case No. 3:10-cv-00271-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendants' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (Dkt. 30.) The motion is now fully briefed. (Dkt. 35, 37, 40, 46.) Both parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 29.)

The Court concludes that oral argument is unnecessary to decide the issues presented in the motion. Having reviewed the record, and having considered the arguments of the parties, the Court enters the following Order.

**MOTION FOR SUMMARY JUDGMENT**

**1.      Standard of Law**

The Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, *as amended*, 42 U.S.C. § 1997e, *et seq.*, requires a prisoner to exhaust all available administrative remedies within the prison system before he can include the claims in a new or ongoing civil rights lawsuit challenging the conditions of confinement. 42 U.S.C. § 1997e(a); *Cano v. Taylor*, 739 F.3d 1214, 1220-21 (9th Cir. 2014) (a claim may be exhausted prior to filing suit or during suit, so long as exhaustion was completed before the first time the prisoner sought to include the claim in the suit). "Proper" exhaustion of administrative remedies is required, meaning that the prisoner must comply "with [the prison's] deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The exhaustion requirement is based on the important policy concern that prison officials should have "an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id.* at 204. Once in court, defendants have the right to bring motions addressing exhaustion of administrative remedies at the beginning of litigation, and disputed factual questions relevant to exhaustion should be decided at that time. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (en banc).

Failure to exhaust is an affirmative defense that may be asserted in a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim only if the

prisoner's failure to exhaust is clear from the face of the complaint and any public records subject to judicial notice. *Albino*, 747 F.3d at 1166. When either party relies on evidence beyond the pleadings and public records, the exhaustion issue should be addressed as a motion for summary judgment under Rule 56. *Id.* at 1170. "If the record is sufficiently developed to permit the trial court to consider summary judgment, and if the court finds that when viewing the evidence in the light most favorable to a moving party the movant has not shown a genuine dispute of fact on the issue of exhaustion," the Court may enter summary judgment for either the moving or the nonmoving party (on the court's own motion). *Id*. at 1176; *see* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may . . . grant summary judgment for a nonmovant.")

Rule 56 prohibits the courts from resolving genuine disputes as to material facts on summary judgment. If a genuine dispute exists as to material facts relating to an exhaustion defense, the motion should be denied, and the "disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue." *Id.* at 1170-71. *See also McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 184 (1936) (stating that the court may "inquire into the facts as they really exist") (internal quotation marks omitted); *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004) (stating that the court may "hold[] an evidentiary hearing on the disputed facts"); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) (stating that the court "has the discretion to take evidence at a preliminary hearing in order to resolve any questions of

**MEMORANDUM DECISION AND ORDER - 3**

credibility or fact" and that the plaintiff must establish the facts "by a preponderance of the evidence, just as he would have to do at trial") (internal quotation marks omitted). The issue of "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino*, 747 F.3d at 1170.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d at 936. If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172.

Confusing or contradictory information given to a prisoner is relevant to the question "of whether relief was, as a practical matter, 'available.'" *Brown*, 422 F.3d at 937. Administrative remedies will be deemed unavailable and exhaustion excused if the inmate had no way of knowing the prison's grievance procedure, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," or if prison staff took any other similar actions that interfered with an inmate's efforts to exhaust. *Albino*, 747 F.3d at 1173.

If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F.3d 1162.

**MEMORANDUM DECISION AND ORDER - 4**

2.  **Material Facts**

The facts material to the administrative exhaustion question are included within the following sections of this decision. The steps required to complete the IDOC Grievance Process, which are published in the prison policy manual, are undisputed. If the facts concerning whether the exhaustion process was properly completed or if an excuse for failure to complete the process is in dispute, the Court has so noted.

   A.   *IDOC Grievance Process*

There are three stages in the IDOC grievance process. First, an inmate with a concern must seek an informal resolution by filling out an offender concern form, addressed to the staff person "most capable of responding to and, if appropriate, resolving the issue." (Whittington Aff., Dkt. 30-2, ¶¶ 5-7.) If the issue cannot be resolved informally through the use of a concern form, the inmate must then file a grievance form. (*Id*., ¶ 8.)

The grievance form must be submitted within 30 days of the incident giving rise to the grievance. (*Id*., ¶ 8.) Only one issue may be raised in a grievance, and there must be "specific information including the nature of the complaint, dates, places, and names." (*Id*., ¶ 9.) After receiving the grievance, the grievance coordinator "enters the grievance information into the Corrections Integrated System (CIS)," an electronic database used to track grievances. (*Id*.) The grievance coordinator then assigns the grievance "to the staff member most appropriate to respond to and, if appropriate, resolve the grievance issue." (*Id*..) That staff member responds to the grievance and returns it to the grievance

coordinator, who logs the information into the CIS database. The grievance coordinator then forwards the grievance to a "reviewing authority," usually a deputy warden. (*Id*.)

The reviewing authority reviews the grievance, including the staff member's response, and then must deny, grant, or modify the grievance. (*Id*., ¶9.) The reviewing authority returns the grievance and response to the grievance coordinator, who logs the response into the database and sends the completed grievance back to the inmate. (*Id*.)

If the decision on an inmate's grievance is not satisfactory to the inmate, the inmate may appeal that decision to the "appellate authority." (*Id*., ¶¶ 10-11.) Usually, the appellate authority is the warden, except as to medical grievances, where the appellate authority is a contract medical provider administrator. (*Id*. at ¶ 11.) When the appellate authority responds, the response is logged into the CIS databased, and the printed grievance and the inmate's original attachments are returned to the inmate. (*Id*.)

When all three of these steps—concern form, grievance form, and grievance appeal—are completed, the administrative grievance process is exhausted. (*Id.,* ¶ 12.)

3.  **Discussion of Plaintiff's Efforts to Complete the Grievance Process**

Plaintiff filed his Complaint on June 1, 2010. (Dkt. 3.) The CIS database contains no record of Plaintiff having filed any grievances within the relevant time period—June 2008 to June 2010. (Whittington Aff., Dkt. 30-2, ¶ 14 & Exhibit D.)

A.  **Claims against Jeff Kirkman**

Plaintiff's claim against Jeff Kirkman arises from the following circumstances. It is undisputed that Kirkman received but did not mail Plaintiff's amended post-conviction relief petition to the state court when Plaintiff presented it to Kirkman for legal mailing,

**MEMORANDUM DECISION AND ORDER - 6**

because the document fell behind a desk, where it lay undetected for almost a year. On November 7, 2006, Kirkman found it and told Plaintiff he would mail it. Plaintiff asserts that Kirkman lied to Plaintiff and never mailed the pleading to the state district court. (Plaintiff Aff. Dkt. 35-3.)

Plaintiff asserts that he was unaware that the amended post-conviction petition had never been filed until he received a copy of the state court register of actions on June 1, 2008, which showed that the amended petition had never been filed. (Dkt. 46, p. 2.) The question, then, using the time periods most favorable to Plaintiff, is whether Plaintiff had adequate opportunity to use the grievance system between June 1, 2008, and July 24, 2008, when he was transferred from ICI-O to ISCI in Boise to await transfer to North Fork Correctional Facility (NFCF) in Oklahoma.

The record contains no evidence that prison officials interfered with Plaintiff's ability to use the prison grievance system at ICI-O during the 54-day period of time before he was transferred to another IDOC facility in Idaho, ISCI. Plaintiff did not attempt to use the established grievance system at all. Plaintiff states that, in June 2008, Ms. Ashford suggested that he speak to Mr. Kirkman to resolve the issue. Plaintiff attempted to do so, but Mr. Kirkman allegedly would not respond to Plaintiff's letter or address the subject in person. However, simply because prison personnel attempted to aid Plaintiff informally (or ignored Plaintiff's attempts to informally address a problem) does not mean that such efforts amount to a sanctioned alternative to the formal grievance system, as Plaintiff argues.

**MEMORANDUM DECISION AND ORDER - 7**

The record is undisputed that Plaintiff did nothing to properly exhaust his administrative remedies through the established prison grievance system. Therefore, this claim is subject to dismissal without prejudice.

B.  **Claims against Sergeant Higgins**

Plaintiff alleges that in July 2008, Defendant Higgins threatened Plaintiff at ISCI that he would not send all of his legal materials with him to NFCF in Oklahoma. Plaintiff further alleges that Higgins, in fact, failed to transport one of Plaintiff's original boxes of legal materials to Oklahoma. (Cherry Aff., ¶¶25-25.) Plaintiff used the Oklahoma offender concern form process to contact Sergeant Higgins about the missing legal materials, and Sergeant Higgins responded:

> I confirmed with you that your large volume of legal work was active. It was placed on the bus and went to Boise with you. I stated "Be prepared to explain why you have a large amount of legal work. (active cases)."

(Dkt. 35-4, p. 7.) Plaintiff alleges that he eventually received the box of materials, but it was in a new, smaller box that contained only about 50% of the materials that had been in the original box. (Cherry Aff., ¶ 24.)

The above correspondence with Sergeant Higgins shows that Plaintiff began the first step of the grievance process, using the NFCF offender concern form, to grieve the loss of the legal materials while in Oklahoma. However, Defendants admit that the IDOC grievance forms that were needed to complete the next several steps "were not available at NFCF." (Dkt. 40, p. 4.) In addition, Plaintiff requested by letter that Mr. Kirkman send him IDOC grievance forms in a letter of September 12, 2008 (Dkt. 35-4, p. 16), but no one ever provided Plaintiff with the IDOC forms while at NFCF.

**MEMORANDUM DECISION AND ORDER - 8**

Based on the foregoing, the Court finds that the record contains undisputed facts that prison officials did not make the Idaho grievance forms available to Plaintiff while he was housed in Oklahoma, and that the time period to submit the grievance regarding Sergeant Higgins' alleged loss or confiscation of the legal materials during transfer expired while Plaintiff was in Oklahoma. Plaintiff is excused from filing a grievance on the Higgins claim because the grievance system was unavailable to him.

The Court rejects Defendants' argument that Plaintiff could have grieved Sergeant Higgins' alleged actions during the five-day period that he remained in an Idaho facility between the day Higgins threatened to not send Plaintiff's legal materials to NFCF and the day Plaintiff was transferred to NFCF. Plaintiff had no reason to grieve a mere threat, especially because other ISCI prison officials assured Plaintiff that, contrary to Higgins' statement, all legal material in Plaintiff's active cases would be transported to Oklahoma with him. It was only when Plaintiff arrived in Oklahoma that he discovered his legal materials had not been shipped with him, and the need to begin the grievance process arose.

C. **Claims against Andrea Blades**

Plaintiff returned to Idaho from Oklahoma on July 10, 2009. (Whittington Aff., ¶ 4 & Exhibit 30-2.) He did not receive his property from Oklahoma until July 15, 2009. At that time, Duane Shedd told Plaintiff that someone named "Andrea" had confiscated several of his legal items, which Plaintiff identifies as six legal cassette tapes, eleven legal photographs, and a bundle of legal papers.

**MEMORANDUM DECISION AND ORDER - 9**

Plaintiff sent a concern form to Andrea Blades on July 15, 2009, and she confirmed that she had confiscated the legal materials. She explained the process for accessing the materials—he was to request an appointment in the Resource Center to access the materials, or choose to send them out to his attorney. (Complaint, Ex 8(c), Dkt. 3-2, p. 3.) Plaintiff was then transferred to ICI-O, in Northern Idaho, and he submitted an ICI-O access to courts form to the paralegal, Ms. Ashford, regarding the legal materials. On July 29, 2009, while at ICI-O, Plaintiff received replies to two of the offender concern forms that he had written at ISCI to check on the missing legal materials.

Plaintiff states: "Since the issues with my missing and illegally confiscated legal materials covered so many individuals in so many different institutions, on the 3rd of August, 2009, I wrote a grievance *in the form of a letter* to Brent Reinke, the Director of Prisons, addressing my issues with Mr. Kirkman, Sgt. Higgins, and Ms. Blades." (Plaintiff Aff., ¶ 53,Dkt. 35-3, emphasis added.) Plaintiff alleges that he received the cassettes and photos on August 4, 2009, but not the legal documents.

On September 2, 2009, Plaintiff received a letter from V. Southwick, an employee of the "Division of Prisons, IDOC," dated August 14, 2009, with a "cc" notation to Director Reinke:

> The letter you sent to Director Reinke, dated 8/3/2009, was forwarded to me for response.
>
> In researching this issue, I received notification that Andrea Blades, paralegal at ISIC, sent your legal boxes to ICIO around July 24, 2009.
>
> Jeff Kirkman, Access to Courts Coordinator for IDOC, will make sure that Laura Ashford, paralegal at ICIO, sees to it that you have access to the documents you need.

**MEMORANDUM DECISION AND ORDER - 10**

> Should you have any more issues regarding access to court issues, please contact Jeff Kirkman at IDOC's Central Office.

(Dkt. 3-4, p. 6.)

Plaintiff alleges that he did not receive the missing legal documents. (Complaint, Dkt. 3, p. 17.) Plaintiff had discussions with Ms. Ashford, who had discussions with Mr. Kirkman, but the issue was never resolved. (*Id.*, ¶¶54-55.)

Plaintiff admits that he decided to work outside the grievance procedures because he felt that he had a multi-facility complaint, and so he decided to write to the Director of the Department of Correction, rather than submit a grievance. The letter he received from Ms. Southwick indicates that she checked with Ms. Blades, and the materials had already been sent to Plaintiff at ICI-O. Plaintiff was directed to contact Mr. Kirkman if he had additional access-to-the-courts issues.

Ms. Southwick did not inform Plaintiff that their correspondence was a substitute for the grievance process, nor did she inform him that the grievance procedures were not necessary if he was unable to resolve the access to courts issues with Mr. Kirkman.

No prison employee misinformed Plaintiff about use of the established grievance system or tried to prevent him from using it to try to resolve his access-to-the courts claim against Ms. Blades. To the contrary, Plaintiff had been advised a year earlier to use the grievance system to resolve similar issues. On September 22, 2008, while Plaintiff was attempting resolution of the Higgins claim with Mr. Kirkman, Plaintiff had received a letter from Mr. Kirkman, stating: "For the grievance procedure to work properly each affected offender needs to grieve their issue with ICI-O and Sgt. Higgins and get a

**MEMORANDUM DECISION AND ORDER - 11**

response from them." (Dkt. 35-4, p. 17.) Clearly, Plaintiff was on notice that the grievance system was the official way to solve problems, and that Mr. Kirkman required offenders to use the grievance process.

The Court rejects Plaintiff's argument that, because he thought the defendants were being untruthful about their words and actions, the grievance procedures would have been futile. Case law is clear that futility is not an excuse for failure to exhaust. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'" *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

The United States Supreme Court explained the importance of proper exhaustion—not on the prisoner's terms, but on the prison's terms—in *Ngo v. Woodford*:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).... Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

548 U.S. at 90 (internal citations and punctuation omitted).

Had Plaintiff used the grievance process, he might have obtained a remedy, because the persons directly involved would be required to respond—Andrea Blades and Jeff Kirkman—*and* their immediate supervisors (and the supervisors of the immediate supervisors) would be informed of Blades' and Kirkman's acts or omissions or of their failure to respond. When Plaintiff became aware that no action to return the legal

**MEMORANDUM DECISION AND ORDER - 12**

materials had been taken under the Southwick correspondence, Plaintiff could have filed a grievance. However, he did not. Rather, he continued to complain verbally and by letter to Mr. Kirkman.

Plaintiff never took any steps to properly inform Mr. Kirkman's supervisors—via a grievance—that Mr. Kirkman was not resolving Plaintiff's issues. The IDOC grievance system is particularly designed to have at least three levels of review of the prisoner's problem, beginning with the prison employee whose act is at issue, and ending with the prison employee's supervisor's supervisor. The final step in the process is normally the warden of the facility, not the director of the IDOC; thus, the letter Plaintiff wrote to the director was entirely outside the grievance system and beyond the specific officials charged with resolving the type of inmate problems reported through the grievance system. The fact that Plaintiff knew of the proper grievance procedure, but chose to skip it, is inexcusable under *Ngo v. Woodford*. Therefore, this claim is subject to dismissal.

4.  **Conclusion**

Based on the record, the Court concludes that the undisputed material facts show that Plaintiff did not exhaust his administrative remedies for his claims against Mr. Kirkman and Ms. Blades. The record reflects that Plaintiff chose to use informal means to try to resolve his grievances. Although some prison officials responded, tried to help him informally, and directed him to other avenues of potential help, they did not misinform him about, interfere with, or prevent him from using, the established grievance process. Therefore, no excuse exists for his failure to use the formal grievance procedures. Accordingly, the Court concludes that these claims will be dismissed without prejudice.

**MEMORANDUM DECISION AND ORDER - 13**

The record also reflects that Plaintiff did not file a grievance regarding his claim against Sergeant Higgins, but is excused from doing so. He had no reason to do so during his five-day stay in Boise before transport to Oklahoma, because only a threat existed at that time. It was only when he arrived in Oklahoma that he discovered that all of his legal materials had not been shipped with him. It is undisputed that IDOC grievance forms were not available to Plaintiff in Oklahoma, despite his request for the forms.

Therefore, the Court concludes that the IDOC grievance system was unavailable to Plaintiff, and Plaintiff may proceed with his claim against Sergeant Higgins. Plaintiff will bear the burden to show that Higgins was responsible for the loss of the legal materials[1] and that Plaintiff suffered an actual injury from the loss.[2]

---

[1] Plaintiff speculates: "The box had been inventoried by Sgt. Higgins on the 6th of August, 2008, so he would have been the last one to handle that box of Legal Materials and he would have been the individual who removed over half of my Legal materials." (Dkt. 35-3, ¶24.) He may now conduct discovery to determine the facts.

[2] Under the First Amendment, prisoners have a right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). The right is limited to the filing of direct criminal appeals, habeas petitions, and civil rights actions. *Id*. at 354. Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a suit or claim that cannot now be tried (backward-looking claim). *Christopher v. Harbury*, 536 U.S. 403, 412–15 (2002). To state an access to courts claim when a prisoner claims that he suffered the loss of a suit or claim that cannot now be brought, a prisoner must allege facts supporting three elements: (1) official acts that frustrated the inmate's litigation; (2) loss of a "nonfrivolous" or "arguable" underlying claim, including the level of detail necessary "as if it were being independently pursued"; (3) specific allegations showing that remedy sought in the access-to-courts claim is not otherwise available in a suit that otherwise could be brought. *Id*. at 415-17. Plaintiff now has completed his criminal appeals and habeas corpus actions, and, thus, Plaintiff should be able to explain exactly how the missing legal materials affected his ability to address certain claims or defenses in those actions.

**MEMORANDUM DECISION AND ORDER - 14**

# ORDER

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. 30) is GRANTED in part and DENIED in part. Claims against Jeff Kirkman and Andrea Blades are dismissed without prejudice. Plaintiff may proceed on his access-to-courts claim against Sergeant Higgins.

**IT IS FURTHER ORDERED** that the parties shall adhere to the following pretrial schedule:

1. **Disclosure of Relevant Information and Documents**: If the parties have not already done so, no later than 30 days after entry of this Order, the parties shall provide each other with relevant information and documents pertaining to the claims and defenses in this case, including the names of individuals likely to have discoverable information, along with the subject of the information, as well as any relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure. Any party may request that the Court conduct an in camera review of withheld documents or information. In camera documents are to be filed ex parte under seal, and not provided by email or mail.

2. **Completion of Discovery and Requests for Subpoenas**: All discovery shall be completed no later than 120 days after entry of this Order. Discovery requests must be made far enough in advance to allow completion of the discovery in accordance with the applicable federal rules prior to this discovery cut-off date.

**MEMORANDUM DECISION AND ORDER - 15**

Discovery is exchanged between parties, not filed with the Court. The Court is not involved in discovery unless the parties are unable to work out their differences between themselves as to whether the discovery responses are appropriate. In addition, all requests for subpoenas duces tecum (pretrial production of documents by nonparties) must be made within 90 days after entry of this Order. No requests for subpoenas duces tecum will be entertained after that date. (Subpoena requests for trial appearances of witnesses shall not be filed until the case is set for trial.) To obtain a subpoena duces tecum for production of documents by nonparties, Plaintiff must first submit to the Court the names, addresses, and the type of information sought from each person or entity to be subpoenaed, and Plaintiff must explain the relevance of the items requested to the claims. The Court will then determine whether the subpoenas should issue.

3. **Depositions**: Depositions, if any, shall be completed no later than 120 days after entry of this Order. If Defendants wish to take the deposition of Plaintiff or other witnesses who are incarcerated, leave to do so is hereby granted. Any such depositions shall be preceded by 10 days' written notice to all parties and deponents. The parties and counsel shall be professional and courteous to one another during the depositions. The court reporter, who is not a representative of Defendants, will be present to record all of the words spoken by Plaintiff (or other deponent), counsel, and any other persons at the deposition. If Plaintiff (or another deponent) wishes to ensure that the court reporter did not make mistakes in transcribing the deposition into a written form, then Plaintiff can request the

opportunity to read and sign the deposition, noting any discrepancies between what is transcribed and what Plaintiff believes was said. If Plaintiff wishes to take depositions, Plaintiff must file a motion requesting permission to do so, specifically showing the ability to comply with the applicable Federal Rules of Civil Procedure by providing the names of the proposed persons to be deposed, the name and address of the court reporter who will take the deposition, the estimated cost for the court reporter's time and the recording, and the source of funds for payment of the cost.

4. **Dispositive Motions**: All motions for summary judgment and other potentially dispositive motions shall be filed with accompanying briefs no later than 150 days after entry of this Order. Responsive briefs to such motions shall be filed within 30 days after service of motions. Reply briefs, if any, shall be filed within 14 days after service of responses. All motions, responses, and replies shall conform to Rule 7.1 of the Local Rules for the District of Idaho. Neither party shall file supplemental responses, replies, affidavits, or other filings not authorized by the Local Rules without prior leave of Court. No motion or memorandum, typed or handwritten, shall exceed 20 pages in length.

5. **Alternative Dispute Resolution (ADR):** Should Plaintiff and any Defendant wish to attend a settlement conference, they should file a stipulation to attend settlement conference, and the case shall then be referred to the Court's ADR Director.

**SO ORDERED.**

DATED: January 6, 2015

Edward J. Lodge
United States District Judge