# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| STEPHEN A. CHERRY, | Case No.: 3:10-CV-00271-EJL |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE:** |
| vs. | **PLAINTIFF'S MOTION TO SHOW CAUSE** |
| DWAYNE SHEDD, JEFF KIRKMAN, RANDY HIGGINS, ANDREA BLADES, BRENT REINKE, and JESSICA LORELLO | **(Docket No. 65)** |
| Defendants. | **PLAINTIFF'S MOTION FOR APPOINTMENT OF COUNSEL (Docket No. 66)** |
| | **PLAINTIFF'S MOTION FOR PERMISSION TO DEPOSE WITNESSES (Docket No. 67)** |
| | **PLAINTIFF'S MOTION FOR PERMISSION TO REPLY (Docket No. 68)** |
| | **PLAINTIFF'S MOTION TO DETERMINE THE SUFFICIENCY OF ANSWERS GIVEN BY DEFENDANT (Docket No. 69)** |
| | **PLAINTIFF'S VERIFIED MOTION TO CORRECT THE RECORD (Docket No. 75)** |
| | **PLAINTIFF'S MOTION FOR PERMISSION TO FILE EXPANDED RESPONSE (Docket No. 78)** |

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 1**

| | **REPORT AND RECOMMENDATION RE:** |
| | |
| | **DEFENDANT RANDY HIGGINS' MOTION FOR SUMMARY JUDGMENT** (Docket No. 71) |

Now pending before the Court are the following motions: (1) Plaintiff's Motion to Show Cause (Docket No. 65); (2) Plaintiff's Motion to Appoint Counsel (Docket No. 66); (3) Plaintiff's Motion for Permission to Depose Witnesses (Docket No. 67); (4) Plaintiff's Motion for Permission to Reply (Docket No. 68); (5) Plaintiff's Motion to Determine the Sufficiency of Answers Given by Defendant (Docket No. 69); (6) Plaintiff's Verified Motion to Correct the Record (Docket No. 75); (7) Plaintiff's Motion for Permission to File Expanded Response (Docket No. 78); and (8) Defendant Randy Higgins' Motion for Summary Judgment (Docket No. 71). Having carefully considered the record and otherwise being fully advised, undersigned enters a Memorandum Decision and Order as to the first six of these non-dispositive motions, and a Report and Recommendation as to the seventh dispositive motion.

## I. RELEVANT BACKGROUND

In 1997, Plaintiff Stephen Cherry was convicted by a jury of first degree murder, aggravated battery, and aggravated assault with a deadly weapon in Idaho state court. *See* Def.'s SOF No. 2 (Docket No. 71, Att. 2). Plaintiff was sentenced to the custody of the Board of Correction to serve life without parole for the murder conviction, thirty years for the aggravated battery conviction, and twenty years for the aggravated assault conviction. *See id*.

In the Summer of 2010, Plaintiff filed the instant action, alleging that Defendants denied him his First Amendment right of access to the courts. *See* Compl. (Docket No. 3). On August

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 2**

16, 2011, United States Magistrate Judge Larry M. Boyle dismissed Plaintiff's Complaint in its

entirety – which, relevant here, included a finding that Plaintiff had not alleged the requisite

"actual injury" to support his access-to-courts claim.  *See* 8/16/11 Order, pp. 2-8, 13 (Docket No.

11).[1]  On appeal, however, the Ninth Circuit Court of Appeals vacated the district court's

dismissal in part, remanding the case back to this Court as to Plaintiff's access-to-courts claim

against certain Defendants, concluding:

> The district court also prematurely dismissed Cherry's access-to-courts claims against defendants Higgins and Blades in light of this court's intervening decision in *Silva* because the allegations in the complaint, liberally construed, were "sufficient to meet the low threshold for proceeding past the screening stage."  *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012); *see Silva*, 658 F.3d at 1102-04 (explaining that prisoners have the right to litigate, without active interference, claims that have a reasonable basis in law or fact, and concluding that allegations that defendants hindered an inmate's ability to litigate his pending civil action resulting in dismissal of the action were sufficient to state a claim).

*See* 10/25/13 Mem., p. 4 (Docket No. 18).[2]

Following remand, the then-remaining Defendants moved for summary judgment on May

21, 2014, arguing that Plaintiff failed to exhaust his administrative remedies.  *See generally*

Defs.' MSJ (Docket No. 30).  On January 6, 2015, United States District Judge Edward J. Lodge[3]

---

[1]  On January 3, 2011, Judge Boyle initially determined that Plaintiff's Complaint did not contain sufficient factual allegations for Plaintiff to proceed, but nonetheless allowed Plaintiff an opportunity to supplement his Complaint.  *See* Initial Review Order, p. 11 (Docket No. 8).  After receiving and reviewing Plaintiff's February 4, 2011 Supplement, Judge Boyle formally dismissed Plaintiff's case on August 16, 2011.  *See* 8/16/11 Order (Docket No. 11).

[2]  Although vacating Judge Boyle's dismissal of Plaintiff's access-to-courts claims against certain Defendants and remanding for further proceedings on those claims, the Ninth Circuit affirmed Judge Boyle's dismissal of Plaintiff's Fourth, Eighth, and Fourteenth Amendment claims and the dismissal of the access-to-courts claim against certain *other* Defendants.  *See* 10/25/13 Mem., p. 4 (Docket No. 18).

[3]  The action was reassigned to Judge Lodge on December 10, 2014.  *See* 12/10/14 Order (Docket No. 47).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 3**

granted, part, and denied, in part, Defendants' Motion for Summary Judgment, dismissing all remaining Defendants except for Defendant Randy Higgins – Plaintiff was permitted to proceed on his access-to-courts claim against Defendant Higgins even though Plaintiff had not exhausted his administrative remedies because the prison grievance system was unavailable when Plaintiff was transferred to an out-of-state prison during the relevant time period he otherwise could have grieved the issues concerning Defendant Higgins.  *See* 1/6/15 Order, p. 15 (Docket No. 48).

On July 31, 2015, Plaintiff moved for leave to amend his Complaint, contending that he "wishes to amend his Complaint to set out more fully the issues and the actual harm experienced and a direct result of Defendant Higgins' actions and/or inactions."  Mot. to Am., p. 1 (Docket No. 58).  On October 29, 2015, Judge Lodge granted Plaintiff's Motion to Amend.  *See* 10/29/15 Order (Docket No. 62).

The overall thrust of Plaintiff's Amended Civil Rights Complaint is that Defendant Higgins confiscated some of Plaintiff's legal materials and evidence pertaining to Plaintiff's state criminal case when he was scheduled to be transferred to an out-of-state prison.  Specifically, Plaintiff makes the following factual allegations:

- "But for the actions and/or inactions, lies, delays, and impediment of Defendant Higgins, Mr. Cherry would not have suffered the permanent loss of irreplaceable exculpatory legal materials and evidence necessary in litigating a case which was active at the time these claims arose and which is still on-going to date, nor would Mr. Cherry have suffered a permanent hindrance to his attack on his criminal case; and, thus been irreversibly harm[ed]."  Am. Civ. Rights Compl., p. 2 (Docket No. 59).

- "Defendant Higgins did deliberately and with intent to violate Mr. Cherry's right to unobstructed and clear access to courts as well as Mr. Cherry's rights guaranteed by the First Amendment to the United States Constitution when Defendant Higgins, in violation of Idaho Department of Corrections (IDOC) custom, practice, and policy, refused to transport Mr. Cherry's irreplaceable exculpatory legal materials and evidence with him for transfer to North Fork

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 4**

Correctional Facility (NFCF) in Oklahoma.  But for these actions and/or inactions, Mr. Cherry would not have suffered permanent placement of a hindrance to . . . Mr. Cherry's attack on his criminal conviction[.]  Defendant Higgins, was the cause in fact of the permanent loss of Mr. Cherry's legal materials." *Id*. at pp. 2-3.

• "Upon notice, Defendant Higgins had the legal duty to locate and return Mr. Cherry's legal materials in its entirety.  Instead, Defendant Higgins deliberately opened a box which had been previously inventoried, sealed and prepared for transport, and repackaged the legal materials.  In the process, Defendant Higgins either caused or allowed the destruction and/or loss of about 50% of the legal materials in that original box.  As a direct result, Mr. Cherry suffered the permanent loss of his legal materials and must now rely upon unfrivolous means to litigate this case and his on-going attack of his criminal case." *Id*. at p. 3.

• "Defendant Higgins did first threaten Mr. Cherry, telling him that his legal paperwork would not go with him to NFCF in Oklahoma, then Defendant Higgins deliberately, with intent, and with full knowledge, in direct violation of IDOC custom, practice, and policy, carried out his threat against Mr. Cherry by in fact not shipping Mr. Cherry's legal materials with him to NFCF which deprived Mr. Cherry of the legal materials necessary in his then active and still on-going attack on his criminal conviction and which was the cause in fact of the permanent loss of 50% of the legal materials which Defendant Higgins refused to send to NFCF.  When Defendant Higgins did finally send the legal materials to Mr. Cherry, about 50% of those legal materials had been permanently lost and/or destroyed." *Id*. at pp. 3-4.

• "The full extent of the harm done to Mr. Cherry can not be fully estimated.  It is completely conceivable that one, all, or some combination of these lost legal materials could have resulted in the successful litigation of his criminal case and but for the loss of those materials, have secured Mr. Cherry's release from prison.  Since the loss of those legal materials, Mr. Cherry has been incarcerated for over (7) years.  What is the value of that lost time?  But for Defendant Higgins' actions and/or inactions, Mr. Cherry would not have been harmed." *Id*. at p. 4.

• "But for Defendant Higgins' actions and/or inactions, lies, delays, hindering, and deliberate indifference, Mr. Cherry would not have suffered irreconcilable harm and the loss of his irreplaceable exculpatory legal documents, photographs, audio tapes, and other material evidence which were and are of primary importance in challenging Mr. Cherry's criminal conviction and proving his innocence by using these materials." *See id*. at p. 5.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 5**

- "On the 21st of July, 2008, Ms. Laura Ashford, the paralegal in charge of the ICI-O Legal Resource Center, and Mr. Cherry inventoried, packed, and taped up a box of legal materials which had been stored at the Resource Center. That Box was labeled with Mr. Cherry's name and addressed to go with him to Oklahoma.  In addition, this box was clearly labeled "Legal" on five (5) sides."  *Id*. at pp. 5-6.

- "During the Roll Up, I notified [Correctional Officer] Gibson that I had a box of legal materials inventoried, taped up, and ready to go in the ICI-O Legal Resource Center. [Correctional Officer] Gibson called Defendant Higgins on the radio and asked him to come to the chapel where the Roll Ups were being done.  When Defendant Higgins arrived at the chapel, [Correctional Officer] Gibson informed him that Mr. Cherry had one box of legal materials which needed to be retrieved from the Resource Center and brought to property to be loaded on the bus. [Correctional Officer] Gibson then handed Defendant Gibson a label which would identify that Box as "Box 2 of 7" of Mr. Cherry's property."  *Id*. at pp. 6-7.

- "Later on in the early evening of July 21, 2008, after Roll Ups were completed, Defendant Higgins came to Mr. Cherry's cell area on Unit C-1; and, as he walked through the door, proclaimed 'you might as well sue us now because you are not taking all that legal material with you to Oklahoma.'" *id*. at p. 7.

- "IDOC custom, practice, and policy is that when an inmate has an active legal case all legal materials are to be transported with him when he is transferred to another institution.  Based on the statement made by Defendant Higgins, it is clear that at this point, Defendant Higgins has decided to act in violation of IDOC custom, practices, and policy, making his actions deliberate with complete indifference to both the harm that Mr. Cherry would experience and the violation of Mr. Cherry's First Amendment Right guaranteed by the United States Constitution.  As the property officer, Defendant Higgins was well aware of IDOC customs, policies, and practices concerning transport of inmates' legal materials."  *Id*.

- On the 29th of July, 2008, Mr. Cherry left ISCI Boise and arrived at NFCF on the 30th of July.  On the 8th of August, 2008, Mr. Cherry finally received his property that had been transported with him to NFCF.  It was at that time that Mr. Cherry noticed that a box of legal materials was missing.  That missing box of legal was the box that was in Defendant Higgins' possession, and intentionally withheld and destroyed by Defendant Higgins."  *Id*. at pp. 8-9.

- "On the 28th of August, 2008, Mr. Cherry received a box containing about one-half of the missing legal materials: (36) days from the time Mr. Cherry was Rolled Up . . . .  On the 28th of August, 2008, Mr. Cherry also received

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 6**

a 'property description sheet' indicating that Defendant Higgins had inventoried 'a box of legal material' clearly showing that all of Mr. Cherry's legal materials had not went to Boise nor Oklahoma with him. Defendant Higgins was the last one to open, inventory, and handle this box of legal materials. The box Mr. Cherry received was not the original box which Ms. Ashford and Mr. Cherry had inventoried, packed, taped, and addressed for Oklahoma. The original box was a large box and was 95% full. The box Mr. Cherry received was a much small box than the original box and was only 50% full. Defendant Higgins, being the last one to handle the legal materials, would have been the only individual who could have removed over one-half of the legal materials from the original box and placed half the materials in a new box and prepared it for shipping." *Id.* at pp. 10-11 (emphasis in original).

- "It is IDOC's custom, practice, and policy that the inmate is to be present when an officer opens, searches, or goes through that inmate's legal property. Defendant Higgins violated IDOC policy when he did open, and repackaged Mr. Cherry's legal documents without Mr. Cherry present. Mr. Cherry's legal materials were already packaged and ready for shipping. There was absolutely no need to repackage the legal materials. It was during or as a direct result of this repacking that one-half of Mr. Cherry's legal materials were irretrievably lost and/or destroyed causing Mr. Cherry permanent harm by setting a permanent impediment to all legal proceedings [that] have to do with Mr. Cherry's attack of his criminal conviction." *Id.* at pp. 11-12.

- "When Defendant Higgins refused to send the legal materials with Mr. Cherry, Defendant Higgins became the cause in fact of the loss of Mr. Cherry's legal materials, thus, depriving Mr. Cherry of his right to unobstructed and clear access to courts and denying Mr. Cherry his First Amendment Rights guaranteed by the Constitution of the United States." *Id.* at p. 12.

- "Mr. Cherry is unsure as to what happened to the other half of legal materials which are still missing. Mr Cherry never received any of these missing materials." *Id.*

- "Defendant Higgins first threatened Mr. Cherry that his legal materials would not go with him to NFCF as was required by IDOC policy. Defendant Higgins then carried out his threat as shown by the fact that the box of legal materials was not sent with Mr. Cherry on the bus. When Defendant Higgins refused to send the legal materials as required, he became the cause in fact of the loss of Mr. Cherry's legal documents and evidence. When Defendant Higgins did finally send the missing legal documents, he deliberately removed about 50% of Mr. Cherry's legal materials and repackaged them in a smaller box. Defendant Higgins caused or allowed the destruction of the remaining 50% of the legal materials." *Id.* at pp. 13-14.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 7**

In turn, Plaintiff transitions these factual allegations into his parallel "Claims for Relief" against Defendant Higgins, alleging in part:

- "For the deliberate, malicious actions that caused the permanent loss of one-half of the legal documents in the original box inventoried and packaged by Ms. Ashford and Mr. Cherry, and for the deprival of Mr. Cherry's unobstructed access to courts and for the violation of Mr. Cherry's rights guaranteed under the First Amendment of the United State Constitution, and finally, for the placing of a permanent impedance to Mr. Cherry's then active and still on-going attack on his criminal conviction . . . ." *Id.* at p. 14.

- "Defendant Higgins, as the ICI-O property officer at the time of his claim and as the person most responsible, first threatened Mr. Cherry with the deprival of his legal documents when Mr. Cherry was transferred to NFCF; then carried out his threat against Mr. Cherry by not shipping the legal materials with Mr. Cherry.  But for these actions, Mr. Cherry would not have been harmed by the permanent loss of his legal materials necessary in attacking his criminal conviction."  *Id.*

- "Defendant Higgins, when he finally did send the legal materials, did open the previously packaged box of legal materials and did repackage the legal materials.  In the process, one-half of Mr. Cherry's legal materials were lost and/or destroyed.  But for these actions, Mr. Cherry would not have suffered the permanent loss of irreplaceable legal documents necessary in attacking his criminal conviction and would not have a permanent impediment to his access to courts in his criminal conviction."  *Id.* at pp. 14-15.

- "Defendant Higgins, by first refusing to ship Mr. Cherry's legal documents with him to NFCF was the cause in fact of the permanent loss and/or destruction of Mr. Cherry's legal documents and the placing of a permanent impediment to his attack on his criminal conviction and violating Mr. Cherry's First Amendment rights under the United States Constitution."  *Id.* at p. 15.

Finally, within the "Relief Requested" section of his Complaint, Plaintiff prays for the following:

- "Compensating relief for the extreme mental anguish caused by the loss of Mr. Cherry's legal materials."  *Id.*

- "Compensating relief for the extreme mental anguish caused by the loss of his legal materials and the permanent impedance in Mr. Cherry's attack on his criminal case."  *Id.* at pp. 15-16.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 8**

- "Compensating and punitive relief in an amount equitable for the time Mr. Cherry has had to remain in prison due to having to litigate his case using inference because of the loss of his legal materials." *Id*. at p. 16.

- "Punitive damages for the permanent loss of his legal documents." *Id*.

- "Punitive damages for the placement of a permanent hindrance to Mr. Cherry's successful attack on his criminal case." *Id*.

- "Such other further relief as deemed necessary and just by the jury or the Court." *Id*.

The undersigned's review of the entirety of Plaintiff's Amended Civil Rights Complaint confirms what this Court and the Ninth Circuit has already understood – that Plaintiff is making an access-to-courts claim against Defendant Higgins. With that backdrop in mind, Defendant Higgins now moves for summary judgment, arguing that there is no evidence that Plaintiff suffered the necessary "actual injury" as a result of his legal materials being lost. *See* Mem. in Supp. of MSJ, p. 3 (Docket No. 71, Att. 1).[4] For the purposes of the at-issue Motion for Summary Judgment only, Defendant Higgins does not dispute that a portion of Plaintiff's legal materials were "misplaced" during his transfer to NFCF. *See id*.

## II.  REPORT/DISCUSSION

**A.      Defendant Randy Higgins' Motion for Summary Judgment (Docket No. 71)**

1.      <u>Legal Standards</u>

*a.      Summary Judgment*

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to

---

[4] Other motions are pending before the Court as well. *See supra*. Because Defendant Higgins' Motion for Summary Judgment is potentially dispositive of the balance of Plaintiff's claims, it therefore drives the Court's consideration of all at-issue motions.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 9**

judgment as a matter of law." Fed. R. Civ. P. 56(a).  One of the principal purposes of the

summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is

instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated

and prevented from going to trial with the attendant unwarranted consumption of public and

private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between

the parties will not defeat an otherwise properly supported motion for summary judgment."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute

as to any material fact – a fact "that may affect the outcome of the case."  *Id*. at 248.  "Disputes

over irrelevant or unnecessary facts will not preclude a grant of summary judgment."  *T.W. Elec.*

*Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence must be viewed in the light most favorable to the non-moving party, and

the Court must not make credibility findings.  *See id*. at 255.  Direct testimony of the non-

movant must be believed, however implausible.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159

(9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences

from circumstantial evidence.  *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine

dispute as to material fact.  *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001).  To

carry this burden, the moving party need not introduce any affirmative evidence (such as

affidavits or deposition excerpts) but may simply point out the absence of evidence to support

the nonmoving party's case.  *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th

Cir. 2000).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 10**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See Devereaux*, 263 F.3d 1t 1076. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *See Celotex*, 477 U.S. at 324.[5] The existence of a scintilla of evidence in support of the non-moving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be capable of being "presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the

---

[5] This reality highlights the difference between motions to dismiss and motions for summary judgment. On a motion to dismiss, courts evaluate the sufficiency of the allegations raised in a complaint. As such, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). This differs from a motion for summary judgment in which courts examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine whether a genuine issue as to any material fact actually exists. *See* Fed. R. Civ. P. 56(c). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Applied here, then, the fact that Plaintiff previously survived then-Defendants' Motion to Dismiss is of no particular moment; Plaintiff must present evidence – beyond the facts alleged in his Complaint – that create an issue of fact to overcome Defendant Higgins' Motion for Summary Judgment. *See, e.g.*, *Meredith v. Ada County Sheriff's Dept.*, 2016 WL 1117401, *4 (D. Idaho 2016) (reversing undersigned's Report and Recommendation and granting defendants' motion for summary judgment, concluding that "Plaintiff has failed to come forward with evidence beyond the allegations in the Complaint to meet his burden to show genuine issues of material facts are in dispute.")

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 11**

Court may consider that fact to be undisputed.  Fed. R. Civ. P. 56(e)(2).  The Court may grant summary judgment for the moving party "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact.  *See Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9ᵗʰ Cir. 1995).  The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment."  *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9ᵗʰ Cir. 1988) (citation and internal quotation marks omitted).  Authentication, required by Federal Rules of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit.  *See id.*  The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document."  *Id*.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9ᵗʰ Cir. 2001) (quotation omitted).  Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts."  *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9ᵗʰ Cir. 2003).

  *b.    Access-to-Courts Claims*

Prisoners have a constitutional right to access the courts.  *See Bounds v. Smith*, 430 U.S. 817, 817, 821, 828 (1977).  The Ninth Circuit has recognized two types of access to court claims:  "those involving prisoners' right to affirmative *assistance* and those involving prisoners'

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 12**

rights to litigate without active *interference*."   *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) (emphasis in original).

The right to assistance requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828.  The right applies only to the "pleading stage" – that is, "preparation of a complaint *and* the preparation of any filings necessary 'to rebut the State's arguments when a court determines that a rebuttal would be of assistance.'"  *Silva*, 658 F.3d at 1102 n.9 (quoting *Cornett v. Donovan*, 51 F.3d 894, 899 (9th Cir. 1995), emphasis in original).  In addition, the right to assistance is limited to the "tools prisoners need 'in order to attack their sentences, [either] directly or collaterally, and in order to challenge the conditions of their confinement.'"  *Id*. (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996)).

Emanating from the First Amendment right to petition the Government and the Fourteenth Amendment right to substantive due process, the right to litigate without active interference (what Plaintiff is alleging here) is somewhat broader.  *See id*.  Although it does not require prison officials to provide affirmative assistance, this right protects inmates' ability to "'pursue legal redress for claims that have a reasonable basis in law or fact.'"  *Id*. (quoting *Snyder v. Nolen*, 380 F.3d 279 (7th Cir. 2004)).  The right affords prisoners "'the opportunity to prepare, serve, and file whatever pleadings or other documents are necessary or appropriate in order to commence *or prosecute* court proceedings affecting one's personal liability, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters.'"  *Id*. at 1103 (quoting *Hatfield v. Bailleaux*, 290 F.2d 632, 637 (9th Cir. 1961)).  The right to undue interference thus extends beyond the pleading stage.  *See id*.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 13**

Importantly, in both assistance and interference cases, a viable access-to-courts claim requires a showing of "actual injury" as a result of defendants' actions. *See Lewis*, 518 U.S. at 349. "Actual injury . . . is 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 348). It exists if the alleged denial of access "hindered [the plaintiff's] efforts to pursue a legal claim," such as having his complaint dismissed "for failure to satisfy some technical requirement," or if he "suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by [the defendant's actions] that he was unable even to file a complaint." *Id.* at 351. In other words, a plaintiff must "demonstrate that a nonfrivolous legal claim has been frustrated or was being impeded" – it is not sufficient to simply allege a lack of assistance or active interference claim. *Id.* at 353; *see also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("However unsettled the basis of the constitutional right of access to courts, our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. . . . . [T]he named plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim . . . .") (quoting *Lewis*, 518 U.S. at 353, and n.3)).

Even so, the right of access to the courts is limited and applies only to direct appeals from convictions for which the inmates are incarcerated, habeas petitions, and civil rights actions regarding prison conditions. *See id.* at 354 ("*Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 14**

inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.").

        2.     <u>Plaintiff Provides No Evidence that He Suffered an Actual Injury, Owing to Defendant Higgins' Alleged Actions</u>

Preliminarily, the question of *whether* Plaintiff's legal materials were lost, misplaced, or somehow destroyed is not before the Court – to be sure, for the purposes of his Motion for Summary Judgment only, Defendant Higgins concedes that this is the case (otherwise  issues of material fact surrounding that question would almost certainly preclude the entry of summary judgment).  Instead, the question becomes whether Plaintiff suffered the required "actual injury" in connection with such an event.  Throughout his Amended Civil Rights Complaint, Plaintiff claims this to be the case, repeatedly commenting that the loss of his legal materials impacted his ability to litigate an "active" case as of July 2008 and "ongoing" as of July 2015.  *See supra* (quoting Am. Civ. Rights Compl., pp. 2-4, 14 (Docket No. 59)).  Although Plaintiff's Amended Civil Rights Complaint does not identify the particular "active" and "ongoing" cases allegedly impacted by the loss of his legal materials, he later noted two actions that were adversely affected via an interrogatory response: (1) a federal habeas case in this District (Case No. 3:05-cv-00413-LMB), and (2) his underlying criminal case in Idaho state court, Kootenai County (Case No. CR-FE-1996-003624).  *See* Interrog. Resp., attached as Ex. A to Magnelli Aff. (Docket No. 71, Att. 4); *see also* Interrog. Resp., attached as Ex. B to Magnelli Aff. (Docket No. 71, Att. 4) ("The Plaintiff believes that the loss of the documents . . . placed an impedance of one sort or another to the Plaintiff's ability to fully present his arguments in a complete manner fully

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 15**

supported by facts and evidence.").  However, for the reasons that follow, neither case represents

the vehicle by which Plaintiff is able to sustain an access-to-courts claim.

        a.        *United States District Court for the District of Idaho*
                    *Case No. 3:05-cv-00413-LMB*

On October 6, 2005, Plaintiff filed a Petition for Writ of Habeas Corpus.  *See* Docket for

Case No. 3:05-cv-00413-LMB, Docket No. 3, attached as Ex. C to Magnelli Aff. (Docket No.

71, Att. 4).  On October 15, 2007, Plaintiff submitted an Amended Petition for Writ of Habeas

Corpus.  *See id*. at Docket No. 15.  The case was initially stayed to allow Plaintiff the time to

exhaust his state court remedies and was re-opened on November 13, 2007.  *See id*. at Docket

No. 17.  The progression of the case thereafter indicates that Plaintiff cannot establish a link

between the action's ultimate termination on September 24, 2010 and any alleged impediment to

his access to the courts by virtue of any misplaced legal materials.  *See Hathaway v. Cote*, 622

Fed. Appx. 701, 702 (9th Cir. 2015) ("Where the adverse decision in the case underlying an

access-to-courts claim would have necessarily occurred anyway, and no other adverse impact

(such as difficulty preserving the claim for appeal) can be shown, no such link can be

established.").  For example:

> •     On February 11, 2008, the State filed a Motion for Partial Summary
> Dismissal, with Plaintiff filing a response on April 11, 2008.  *See id*. at
> Docket Nos. 21 & 26.  On September 9, 2008, Judge Boyle issued an order
> dismissing the Petition in part, based on Plaintiff's failure to exhaust his state
> court remedies as he failed to raise these dismissed claims in state court.  *See
> generally* 9/9/08 MDO, pp. 10-12, attached as Ex. E to Magnelli Aff. (Docket
> No. 71, Att. 5) ("Aside from the five claims that are not subject to
> Respondent's Motion for Partial Summary Dismissal, none of Petitioner's
> other claims in his timely original Petition that were reiterated in the
> Amended Petition were fairly presented to the Idaho Supreme Court.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 16**

Because it is too late to return to state court and exhaust these claims properly, they are now procedurally defaulted."). In short, all substantive filings by Plaintiff in response to the State's Motion for Partial Summary Dismissal were made *prior to* July 21, 2008, when he boxed up his legal materials ahead of his transport to Oklahoma.

- On November 19, 2008, Plaintiff filed a Request for Leave to File an Amended Petition for Writ of Habeas Corpus and Request to Stay Proceedings. *See* Request for Leave to File Am. Pet., attached as Ex. F to Magnelli Aff. (Docket No. 71, Att. 5). In support of this Request, Plaintiff alleged that he "ha[d] discovered additional issues that deserve[d] review by the Court including a claim of actual innocence," while also alleging unspecified "government misconduct" and a "conspiracy." *Id.* at pp. 1-2. Judge Boyle denied the Request on June 26, 2009, pointing out again that Plaintiff failed to exhaust his state court remedies:

> Even if Petitioner's proffered claim of innocence could provide a basis for habeas relief, the Court nevertheless concludes that both that claim and Petitioner's undefined allegation of governmental misconduct are procedurally defaulted in this proceeding. Before raising a claim in federal court, a habeas petitioner must have properly exhausted his state court remedies by raising the same federal claim in the highest state court in a procedurally proper manner under state law. Here, Petitioner has not presented his proposed claims in the Idaho state courts in a procedurally proper manner, and any attempt to do so now would now be dismissed as untimely. When it is too late to return to state court to raise a claim, it is considered to be procedurally defaulted. Therefore, it would be futile for the Court to allow an amendment that must be dismissed as procedurally barred.

6/26/09 MDO, pp. 6-7, attached as Ex. G to Magnelli Aff. (Docket No. 71, Att. 5) (internal citations omitted). Judge Boyle alternatively found that Plaintiff's proposed claims were "without any factual or evidentiary support" and "plainly lacking in merit" in any event, noting the "very high" burden for proving a claim of actual innocence. *See id.* at p. 7 ("The burden for proving a claim of actual innocence is very high; assuming that such a claim could provide a freestanding basis for relief, [Plaintiff] would be required to 'go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'") (quoting *Carriger v. Stewart*, 132 F. 3d 463,

476 (9th Cir. 1997)).  According to Judge Boyle, Plaintiff's inconsistent, "unsupported and conclusory *statements* made many years after the events took place," failed to meet the applicable standards.  *Id*. at p. 8 (emphasis in original).[6]

- On August 3, 2009, Plaintiff filed a Motion for Injunctive Order, discussing the July 2008 confiscation of his legal materials.  *See* Mot. for Inj. Order, attached as Ex. H to Magnelli Aff. (Docket No. 71, Att. 6).  Therein, Plaintiff asked this Court "to issue state wide to the Idaho Department of Corrections an 'Injunction Order," a "Restraining Order" or the proper term this Court sees needed, and "Order" the IDOC to return all confiscated, missing legal documents to [Plaintiff]."  *Id*. at p. 8.  On October 6, 2009, Judge Boyle denied Plaintiff's Motion without prejudice, with the following caveat: "However, if it becomes apparent that [the State] or [its] agents are not following IDOC policy regarding retention and access to legal material, *and* [Plaintiff] can show that a lack of access has harmed his ability to fairly litigate this case, the Court may reconsider the request at that time."  10/6/09 Order, p. 1, attached as Ex. I to Magnelli Aff. (Docket No. 71, Att. 6). Plaintiff never asked the Court to reconsider his request.  *See* Mem. in Supp. of MSJ, p. 10 (Docket No. 71, Att. 1).

- On September 1, 2009, the State filed a Motion for Summary Judgment, requesting the dismissal of Plaintiff's Amended Petition for Writ of Habeas Corpus; Plaintiff responded to the Motion on March 1, 2010.  *See* Docket for Case No. 3:05-cv-00413-LMB, Docket Nos. 68 & 92, attached as Ex. C to Magnelli Aff. (Docket No. 71, Att. 4).  Judge Boyle granted the Motion on September 24, 2010, dismissed the five remaining claims, and thus denied Plaintiff's Amended Petition for Writ of Habeas Corpus.  *See* 9/24/10 MDO, attached as Ex. J to Magnelli Aff. (Docket No. 71, Att. 6).  More specifically:

  - The Court dismissed two of Plaintiff's claims – conflict of interest and evidence of prior bad acts – on procedural grounds, noting that, as to both, Plaintiff failed to exhaust his state court remedies.  *See id*. at pp. 7-10.

---

[6]  The point here is that, even if Plaintiff had his now-misplaced legal materials when making his November 19, 2008 Request (identified by him as notes and letters from various individuals providing their analyses of the case, Plaintiff's legal representation during trial, his conditions of confinement while in jail, and statements about trial strategy (*see* Interrog. Resp., attached as Ex. B to Magnelli Aff. (Docket No. 71, Att. 4))), Judge Boyle's rationale in denying the Request would still apply.

- The Court dismissed the remaining three claims – admissibility of incriminating statements, delay in the direct appeal, and ineffective assistance of counsel – on the merits as follows:

  - As to Plaintiff's claim concerning the admissibility of incriminating statements, the Court determined that "[t]he state court's legal conclusion about the use of incriminating statements is a straightforward application of clearly established federal law, and [Plaintiff] has not shown otherwise" or that "the state court's decision that his statements were voluntary was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Id*. at p. 9.

  - As to Plaintiff's claim that his due process rights were violated by the court reporter's delay in preparing a transcript of the trial (thereby holding up the direct appeal for over four years), the Court found that Plaintiff failed to establish any prejudice as a result of the delay. *See id*. at pp. 10-13 ("He failed to establish in state court that an appellate issue was lost or impaired because of the delay, and, because his convictions were affirmed, he could not demonstrate that an unjustified incarceration was needlessly prolonged while he awaited appellate review or that the delay impacted his ability to defend himself at a retrial.").

  - As to Plaintiff's ineffective assistance of counsel claim, the Court held that "[Plaintiff's] mere dissatisfaction with the amount of time that his counsel spent with him before trial does not establish a constitutional violation" or that "there would be a reasonable probability of a different outcome had his counsel met with him more frequently and discussed the evidence more thoroughly." *Id*. at p. 15. Moreover, the Court determined that "the decision of which witnesses to call at trial . . . implicates counsel's strategic considerations that will not be second-guessed unless the strategy is objectively unreasonable." *Id*. ("[Plaintiff] has named some of the witnesses he believes that counsel should have subpoenaed, but he has not provided the substance of their anticipated testimonies, let alone shown how the evidence would have potentially made a difference in his trial. As a result, the state court's resolution of these claims was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.").

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 19**

- The Court did not issue a Certificate of Appealability because (1) "reasonable jurists would not debate [the Court's determination] that several of Plaintiff's claims are procedurally defaulted and must be dismissed on those grounds"; and (2) "the denial of relief on the merits of [Plaintiff's] claims that his incriminating statements were involuntary, that the delay on appeal violated his right to due process, and that he was deprived of the effective assistance of counsel are not reasonably debatable." *Id*. at p. 16.

- On November 30, 2010, Plaintiff filed a Notice of Appeal pursuant to Rule 22 of the Federal Rules of Appellate Procedure and Local Ninth Circuit Rule 22-1. *See* Docket for Case No. 3:05-cv-00413-LMB, Docket No. 112, attached as Ex. C to Magnelli Aff. (Docket No. 71, Att. 4). On September 21, 2011, the Ninth Circuit denied Plaintiff's certificate of appealability. *See* 9/21/11 Order, attached as Ex. K to Magnelli Aff. (Docket No. 71, Att. 6).

In short, given the requirement that Plaintiff establish either that federal law was applied incorrectly, or that the state court's decision was unreasonable based on the evidence presented, Plaintiff cannot establish a link between the dismissal of his federal habeas petition and any perceived impediment to his access to courts. *See Hathaway*, 622 Fed. Appx. at 702-03 ("As the deprivation of Hathaway's legal papers did not cause his claim to be lost, rejected, or impeded, Hathaway suffered no actual injury.") (internal citations omitted).

        b.     *Idaho State Court, Kootenai County*
              *Case No. CR-FE-1996-03624*

Following the remittitur from the appellate court on February 6, 2004, Defendant Higgins claims that Plaintiff (Defendant in the state court action) did not file any motions in his state court case until March 2013. *See* Mem. in Supp. of MSJ, p. 6 (Docket No. 71, Att. 1) (citing Register of Actions in Kootenai County for Case No. CR-FE-1996-03624, attached as Ex. L to

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 20**

Magnelli Aff. (Docket No. 71, Att. 7).[7]  Indeed, on March 5, 2013, Plaintiff filed a multitude of motions, including a Motion for New Trial; and, on March 27, 2013, a Motion to Vacate Conviction and Sentence.  *See* Mots. for New Trial and Mot. to Vacate Convict. and Sent., attached as Exs. M & O to Magnelli Aff. (Docket No. 71, Atts. 7 & 8).

In his Motion for New Trial, Plaintiff admitted that his filing "f[ell] outside of the normally accepted standards for timeliness," but believed that "extenuating circumstances" existed to "render the time limits impertinent, inappropriate, and moot" – namely, that, despite his many requests for discovery materials (so that he could participate in his own defense), no such materials were ever delivered to him until April 4, 2004 ("about eight years following his conviction and sentencing").  Mot. for New Trial, p. 2, attached as Ex. M to Magnelli Aff. (Docket No. 71, Att. 7).  Plaintiff then proceeded to argue that he was "not guilty of murder in the first degree" and that his Motion for New Trial was not frivolous when considering the newly-discovered evidence of errors at trial.  *Id.* at p. 5.[8]  However, ten days after filing his Motion for New Trial, District Judge John T. Mitchell denied Plaintiff's request as untimely, stating:

---

[7] From the Court's own review of the Register, it would seem as though Plaintiff (Defendant in the state court action) filed (1) a "Brief in Support of Petition for Special Writ Seeking Appointment for Counsel" on or around March 29, 2004, and (2) a "Motion for Free Docket Sheet" on December 12, 2012.  *See* Register of Actions in Kootenai County for Case No. CR-FE-1996-03624, attached as Ex. L to Magnelli Aff. (Docket No. 71, Att. 7).  Any discrepancy in these respects is immaterial to the arguments raised within Defendant Higgins' Motion for Summary Judgment.

[8] Plaintiff neither contended that Defendant Higgins' alleged misplacement of his legal materials in July 2008 contributed to the untimeliness of his March 2013 Motion for New Trial, nor provided a basis for a new trial.  *See generally* Mot. for New Trial, attached as Ex. M to Magnelli Aff. (Docket No. 71, Att. 7).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 21**

> Cherry's Motion for New Trial, filed March 5, 2013 is untimely. Under I.C.R. 34, Cherry had fourteen days from the verdict, finding of guilt or imposition of sentence. The latest of these dates would be the date of sentencing. According to Cherry, he was sentenced on December 16, 1997. Thus, Cherry is fifteen years and three and one half months too late. The Court is without jurisdiction to grant Cherry the relief requested. Even if Cherry's motion for new trial were based on newly discovered evidence, the motion must be filed within two years of judgment. In that case, Cherry is thirteen years and four months too late. Again, the Court lacks jurisdiction to hear Cherry's motion for new trial.

3/15/13 Order, attached as Ex. N to Magnelli Aff. (Docket No. 71, Att. 8) (internal citations omitted).

In his Motion to Vacate Conviction and Sentence, Plaintiff alleged that "the record before the Court before his trial, clearly reflected the material fact that [he] was lawfully incompetent to stand trial at the time he was subjected to both trial and conviction in violation(s) of his constitutional rights and clearly established law(s)." Mot. to Vacate Convict. and Sent., p. 4, attached as Ex. O to Magnelli Aff. (Docket No. 71, Att. 8) (internal quotation marks omitted).[9] However, one day after filing his Motion to Vacate Conviction and Sentence, Judge Mitchell similarly denied Plaintiff's request as untimely, stating:

> Cherry's Motion to Vacate Conviction and Sentence . . . claims Cherry has the right to a new trial under I.C. § 19-2406. Implicit in Cherry's argument is the claim that the statute somehow trumps the timelines imposed by I.C.R. 34. This Court is not impressed with such implicit argument. Idaho Code § 19-2406 sets forth the *grounds* for a new trial, but that statute does nothing to address the process in which a motion for a new trial occurs. Idaho Criminal Rule 34 sets forth the *procedural mechanism* for bringing a motion for a new trial. Cherry's citing I.C. § 19-2406 does not provide him with any ability to make an "end run" around the time requirements of I.C.R. 34. As pointed out in this Court's Memorandum Decision and Order Denying Defendant's Motion for New Trial and Motion to Disqualify, p. 2, Cherry's Motion

---

[9] Again, Plaintiff neither contended that Defendant Higgins' alleged misplacement of his legal materials in July 2008 contributed to the untimeliness of his March 2013 Motion to Vacate Conviction and Sentence, nor provided a basis for altering said conviction and/or sentence. *See generally* Mot. to Vacate Convict. and Sent., attached as Ex. O to Magnelli Aff. (Docket No. 71, Att. 8).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 22**

for New Trial, filed March 5, 2013, is untimely.  Under I.C.R. 34, Cherry had fourteen days from the verdict, finding of guilt or imposition of sentence.  The latest of these dates would be the date of sentencing.  According to Cherry, he was sentenced on December 16, 1997.  Thus, Cherry is fifteen years and three and one half months too late.  The Court is without jurisdiction to grant Cherry the relief requested.  Even if Cherry's motion for new trial were based on newly discovered evidence, the motion must be filed within two years of judgment.  In that case, Cherry is thirteen years and four months too late.  Again, the Court lacks jurisdiction to hear Cherry's motion for new trial.

For those same reasons, this Court lacks jurisdiction to consider [Cherry's] Motion to Vacate Conviction and Sentence . . . .

3/28/13 Order, attached as Ex. P to Magnelli Aff. (Docket No. 71, Att. 8) (internal citations omitted, emphasis in original).[10, 11]

Then, on May 29, 2015, Plaintiff filed another collection of motions, including a Motion to Correct an Illegal Sentence, claiming again that he was incompetent during the time of his trial.  *See* Mem. in Supp. of Mot. to Correct an Illegal Sent., p. 2, attached as Ex. T to Magnelli Aff. (Docket No. 71, Att. 9) ("Mr. Cherry now asserts that his sentence was and is illegal due to the fact that there appeared on the face of the court record that Mr. Cherry was not able to assist in his own defense; thus rendering him incompetent and therefore unable to be sentenced or

---

[10]  Plaintiff apparently appealed this decision, but it was dismissed by the Idaho Supreme Court on October 29, 2013 for failing to comply with appellate rules.  *See* 10/29/13 Order, attached as Ex. Q to Magnelli Aff. (Docket No. 71, Att. 8).

[11]  Plaintiff filed a follow-up Motion to Vacate Conviction and Sentence on April 16, 2013, based on claims of ineffective assistance of counsel and incompetency.  *See* Mot. to Vacate Convict. and Sent., attached as Ex. R to Magnelli Aff. (Docket No. 71, Att. 8).  Again, Plaintiff  never alleges or raises the loss of his legal materials as a basis for this latest Motion. *See generally id.*  It does not appear that the state court ever issued an order regarding this Motion as evidenced by Plaintiff's May 30, 2013 correspondence.  *See* 5/30/13 Ltr., attached as Ex. S to Magnelli Aff. (Docket No. 71, Att. 8).  Still, the undersigned agrees with Defendant Higgins that the claims raised therein are claims Plaintiff has unsuccessfully raised or tried to raise continuously since his conviction.  *See* Mem. in Supp. of MSJ, p. 8 (Docket No. 71, Att. 1).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 23**

punished . . . .").[12]  On June 10, 2015, Judge Mitchell denied the Motion, finding that it was not

apparent on the record (affidavits from Plaintiff himself and another inmate) that Plaintiff was

incompetent at the time of sentencing, keeping in mind that such motions are limited to

correcting "a sentence that is illegal from the face of the record . . . ."  6/10/15 Order, p. 4,

attached as Ex. U to Magnelli Aff. (Docket No. 71, Att. 9) (citing Idaho Crim. R. 35(a)).

According to Judge Mitchell:

> If Cherry claims his life sentence was illegal 'from the face of the record,' then why
> would Cherry submit affidavits?  Idaho Criminal Rule 35(a) allows correction when
> it is a matter of law, or when the facts are not in dispute from the face of the record.
> An example is when a judge imposes a sentence which exceeds the statutory
> maximum for a given crime to which a defendant has plead guilty or has been bound
> guilty by a jury.  Cherry's fixed life sentence is within the statutory maximum for the
> felony crime of first degree murder.  For this Court to have the ability "at any time"
> to correct Cherry's alleged illegal sentence, that illegality must be "apparent from the
> face of the record." . . . .
>
> In Cherry's present motion, the factual issue of Cherry's lack of competency at the
> time of trial must be "apparent from the face of the record," and it is not.  Thus,
> Cherry's I.C.R. 35 Motion is denied.

*Id.* at pp. 5, 7 (internal citations omitted).  Plaintiff appealed the court's decision, which was

dismissed by the Idaho Court of Appeals on November 18, 2015 because he failed to pay the fee

for the clerk's record.  *See* 11/18/15 Order, attached as Ex. V to Magnelli Aff. (Docket No. 71,

Att. 9).

These circumstances, drawn from Plaintiff's underlying criminal case in Idaho state

court, establish that Plaintiff's efforts to secure a new trial and/or vacate/correct his

conviction/sentence were properly dismissed on procedural grounds and/or because the record of

the case did not warrant a different result.  As a result, Plaintiff has not and cannot establish that

---

[12]  Again, Plaintiff neither contended that Defendant Higgins' alleged misplacement of
his legal materials in 2008 provided a basis for correcting any sentence.  *See generally* Mot. to
Correct an Illegal Sent., attached as Ex. T to Magnelli Aff. (Docket No. 71, Att. 9).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 24**

he suffered an actual injury in his state court action as a result of his legal materials being misplaced in July 2008.[13]

        *c.*     *Future Legal Proceedings*

In discovery responses, Plaintiff discusses in general and, at times, confusing terms how his misplaced legal materials could impact future filings of his. *See, e.g.*, Interrog. Resp., attached as Ex. B to Magnelli Aff. (Docket No. 71, Att. 4). For example, he talks of future ineffective assistance of counsel claims, possible prison condition claims, and that he still "has not exhausted his remedies in his criminal case" – hand-in-hand with his since-dismissed state and federal claims. *See id.* at pp. 14-19.

Notwithstanding the fact that such forward-looking proceedings resemble cases that he has already unsuccessfully raised, "the loss of evidence that *might* support a future civil rights

---

[13] Although not identified by Plaintiff in his Amended Civil Right Complaint or discovery responses in this action, Defendant Higgins points out that Plaintiff has also filed (1) two motions for post-conviction relief in Idaho state court, Kootenai County (Case No. CV-2004-8445), and (2) a § 1983 claim (Case No. 3:10-cv-00424-BLW) on August 23, 2010 in this Court, based upon his arrest, trial, and conviction. *See* Mem. in Supp. of MSJ, pp. 11-12 (Docket No. 71, Att. 1). But, according to the Register of Plaintiff's above-mentioned post-conviction relief case, those motions were denied in 2005 and 2007 – prior to his legal materials being misplaced in July 2008. *See* Register of Actions in Kootenai County for Case No. CV-2004-8445, attached as Ex. W to Magnelli Aff. (Docket No. 71, Att. 9). Additionally, U.S. District Judge B. Lynn Winmill dismissed Plaintiff's above-mentioned § 1983 claim on April 10, 2011, concluding that (1) Plaintiff cannot proceed on any of his claims calling into question the validity of his conviction or sentence under *Heck v. Humphrey* (convictions or sentences had not been overturned); (2) Plaintiff's claims are untimely; and (3) Plaintiff's claims against the deputy attorneys general were barred by absolute prosecutorial immunity. *See generally* 4/10/11 Order, attached as Ex. Y to Magnelli Aff. (Docket No. 71, Att. 9). Judge Winmill also instructed Plaintiff not to file any future civil rights actions arising from his arrest or conviction unless his conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *See id.* at p. 4. In any event, while Plaintiff's § 1983 claim arose after his legal materials went missing in July 2008, there is no indication that it was dismissed due to such an event.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 25**

action is much too speculative to support an access to courts claim." *Carr v. Carlyn*, 2014 WL 295236, *9 (D. Idaho 2014).  "The actual injury requirement cannot be satisfied by an allegation that a qualified legal action would have been easier to prosecute if not for a defendant's actions." *Id*. But Plaintiff will have to overcome the same legal barriers he has already faced (timeliness, scope of review, and exhaustion of remedies) and he has not provided any information to support a finding that the missing materials could provide him with a means to overcome these barriers. Regardless, Plaintiff's allegations simply do not show that he was "so stymied [by Defendant Higgins' actions] that he was [(or will be)] unable to even file a complaint." *Lewis*, 518 U.S. at 351.[14]

For the foregoing reasons, the undersigned finds that there is no genuine dispute as to any material fact in this case, and that Defendant Higgins is entitled to judgment as a matter of law. It is therefore recommended that Defendant Higgins' Motion for Summary Judgment (Docket No. 71) be granted.

**B.      Plaintiff's Motion to Show Cause (Docket No. 65)**

Plaintiff moves this Court to issue an order to show cause why certain expert witnesses should not be appointed – in particular, (1) a "non-biased criminal trial attorney, to explain to the jury the significance and importance of even a single piece of evidence at trial or at any level of litigation"; and (2) an "experienced Idaho Department of Correction training officer."  Mot. to Show Cause, pp. 1-2 (Docket No. 65).

---

[14] In this respect, it should be mentioned that Plaintiff had five cases pending in this District as of the date of Defendant Higgins' Motion for Summary Judgment – two of which were filed on January 4, 2016.  *See* Magnelli Aff., ¶ 8 (Docket No. 71, Att. 3).

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 26**

Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981). Whether to appoint counsel for indigent litigants is within the Court's discretion. *See Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id.* To determine whether exceptional circumstances exist, the Court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *See Terrell v. Brewer*, 935F.2d 1015, 1017 (9th Cir. 1990). Neither factor is dispositive, and both must be evaluated together. *See id*.

Applying the factors to this case, the undersigned finds that there is no likelihood of success on the merits as reflected in the recommendation that Defendant Higgins' Motion for Summary Judgment be granted. Therefore there is no basis for the Court to grant Plaintiff's Motion to Show Cause for the purposes of appointing either legal counsel or expert witness familiar with Idaho Department of Correction training protocol. Plaintiff's Motion to Show Cause (Docket No. 65) is denied.

**C.      Plaintiff's Motion to Appoint Counsel (Docket No. 65)**

Plaintiff claims that, given this action's complexity, coupled with his inability "to perform other tasks that normally attend litigation," counsel should be appointed. *See* Mot. to Appoint Counsel, pp. 1-2 (Docket No. 65). For the same reasons applied to Plaintiff's Motion to Show Cause (filed the same day), there is no basis to appoint legal counsel. Plaintiff's Motion to Appoint Counsel (Docket No. 65) is denied.

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 27**

**D.      Plaintiff's Motion for Permission to Depose Witnesses (Docket No. 67)**

Plaintiff seeks permission to depose six individuals familiar with the circumstances surrounding Defendant Higgins' alleged misplacement of his legal materials.  *See generally* Mot. for Perm. to Depose Witnesses (Docket No. 67).  However, for the purposes of Defendant Higgins' Motion for Summary Judgment, this fact was already assumed.  *See supra*.  And, even with that fact assumed, Plaintiff could not establish an actual injury based upon the misplacement of those legal materials.  *See id*.  Therefore, there is no basis for the Court to allow Plaintiff the opportunity to depose the identified individuals.  Plaintiff's Motion for Permission to Depose Witnesses (Docket No. 67) is denied.

**E.      Plaintiff's Motion for Permission to Reply (Docket No. 68)**

Plaintiff requests permission to "reply to the Defendant's Answer to Amended Civil Rights Complaint."  Mot. for Perm. to Reply, p. 1 (Docket No. 68).  There is no legal basis for such a request.  Just as Plaintiff is permitted to submit a pleading in the form of his Amended Civil Rights Complaint, Defendant Higgins is permitted to submit his own responsive pleading – in this case his Answer to Plaintiff's Amended Civil Rights Complaint.  Under applicable procedural rules, the sufficiency of the allegations contained in either pleading is tested through discovery and directed motion practice, not an endless volley of each party's responses to the other's allegations.  Plaintiff's Motion for Permission to Reply (Docket No. 68) is denied.

**F.      Plaintiff's Motion to Determine the Sufficiency of Answers Given by Defendant (Docket No. 69)**

Plaintiff moves this Court "to determine the sufficiency" of Defendant Higgins' Answer to Plaintiff's Amended Civil Rights Complaint, arguing:

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 28**

1.      The Plaintiff believes the Answer to be evasive and insufficient;

2.      The Defendant waived his Answer in several paragraphs and thus caused the Answer to be incomplete and insufficient; and

3.      The Plaintiff believes that the Defendant failed to Answer the Complaint because of the insufficiency of his Answer.

Mot. to Determine Sufficiency of Answers, pp. 1-2 (Docket No. 69). Plaintiff provides no details about the specific sections of Defendant Higgins' Answer by which the Court could consider Plaintiff's argument – assuming there was even a basis for determining the sufficiency of said sections. Without such detail, the Court is unable to act upon Plaintiff's request. Plaintiff's Motion to Determine the Sufficiency of Answers Given by Defendant (Docket No. 69) is denied.

**G.      Plaintiff's Verified Motion to Correct the Record (Docket No. 75).**

Plaintiff attempts the clarify the record concerning the correct dates leading up to his transport to NFCF in Oklahoma. *See* Mot. to Correct the Record, p. 2 (Docket No. 75) ("The Roll Ups were actually done on the 23rd of July, 2008, instead of on the 21st of July, 2008. And the transport to ISCI - Boise was done on the 24th of July, 2008."). These changes are noted and Plaintiff's Verified Motion to Correct the Record (Docket No. 75) is granted. However, such facts are not "material" facts that would otherwise affect the undersigned's recommendation on Defendant Higgins' Motion for Summary Judgment. *See supra* (defining material fact as fact "that may affect the outcome of the case").

**H.      Plaintiff's Motion for Permission to File Expanded Response (Docket No. 78).**

Plaintiff requests that he be allowed to file an overlength brief in response to Higgins' Motion for Summary Judgment. Ordinarily, given the scope of the claims presented within

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 29**

Plaintiff's Amended Civil Rights Complaint, such a request would be reasonable (even when keeping in mind Defendant Higgins' compliance with the page requirements of his underlying briefing). Having said this, Plaintiff's 67-page response (not including exhibits) is excessive and, at times, creates more confusion than it resolves. Regardless, to complete a full record of the issue, the undersigned exercises his discretion and allows the overlength brief. Plaintiff's Motion for Permission to File Expanded Response (Docket No. 78) is granted.

### III.  RECOMMENDATION/ORDER

Based on the foregoing, IT IS HEREBY RECOMMENDED THAT Defendant Randy Higgins' Motion for Summary Judgment (Docket No. 71) be GRANTED.

Pursuant to Local Civil Rule 72.1(b)(2), a party objecting to a Magistrate Judge's recommended disposition "must serve and file specific, written objections, not to exceed twenty pages . . . within fourteen (14) days. . ., unless the magistrate or district judge sets a different time period." Additionally, the other party "may serve and file a response, not to exceed ten pages, to another party's objections within fourteen (14) days after being served with a copy thereof."

IT IS FURTHER HEREBY ORDERED THAT:

1.      Plaintiff's Motion to Show Cause (Docket No. 65) is DENIED;

2.      Plaintiff's Motion to Appoint Counsel (Docket No. 66) is DENIED;

3.      Plaintiff's Motion for Permission to Depose Witnesses (Docket No. 67) is DENIED;

4.      Plaintiff's Motion for Permission to Reply (Docket No. 68) is DENIED;

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 30**

5.      Plaintiff's Motion to Determine the Sufficiency of Answers Given by Defendant (Docket No. 69) is DENIED;

6.      Plaintiff's Verified Motion to Correct the Record (Docket No. 75) is GRANTED; and

7.      Plaintiff's Motion for Permission to File Expanded Response (Docket No. 78) is GRANTED.

DATED:  **August 15, 2016**

Honorable Ronald E. Bush
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER/REPORT AND RECOMMENDATION - 31**